UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CAROL MORRIS, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 14-0338 (RC) |
| | : | | |
| v. | : | Re Document No.: | 4 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING PLAINTIFF'S MOTION FOR AN INJUNCTION AND ENTERING JUDGMENT FOR THE PLAINTIFF

## I. INTRODUCTION

This case arises under the Individuals with Disabilities Education Act ("IDEA"). On March 3, 2014, the plaintiff, Carol Morris, filed a complaint challenging a hearing officer's decision to dismiss her case filed on behalf of her son, J.J., as moot. *See* Compl. ¶ 1, ECF No. 1. On March 7, 2014, the plaintiff filed a motion for a preliminary injunction, asking this Court to remand the case to the hearing officer with instructions to hold a hearing of Ms. Morris's original due process complaint within 10 calendar days. *See* Pl.'s Mot. Prelim. Injunction 13, ECF No. 4. The Court held a motions hearing on this matter on April 10, 2014. Upon consideration of the parties' motions, and based on the parties' representations at the hearing, the Court will remand this case back to the hearing officer for a decision on the merits of the plaintiff's case.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The IDEA provides that "all children with disabilities have available to them a free appropriate public education ("FAPE") that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and

independent living." 20 U.S.C. § 1400(d)(1)(A). The centerpiece of the IDEA is the individualized education program ("IEP"), which "set outs the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *See Honig v. Doe*, 484 U.S. 305, 311 (1988). To ensure a child's and a parent's participation in IEP development, Congress created procedural safeguards to guide the process. *See* 20 U.S.C. § 1415. 20 U.S.C. §1415(b)(6) allows parents to file a due process complaint, and 20 U.S.C. §1415(f) entitles them to a due process hearing by a State or local education agency regarding that complaint, when they feel their child has been denied a FAPE. Once a hearing officer makes a decision regarding a parent's complaint, "[a]ny party aggrieved by the findings and decision . . . shall have the right to bring a civil action with respect to the complaint presented . . . ." *See* 20 U.S.C. § 1415(i)(2)(A). That same section specifies that "[i]n any action brought under this paragraph, the court (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C).

On November 14, 2013, Ms. Morris filed a due process complaint under the IDEA on behalf of her son, J.J., challenging the District of Columbia Public School's ("DCPS") placement of J.J. in an inadequate school with a part-time IEP. *See* Compl. ¶ 11. The facts alleged in her due process complaint were generally as follows. J.J. was detained at a center called Vision Quest, and had just been released (or was about to be released) to a DCPS school, Ballou Senior High School. *See* Pl.'s Ex. 1 ¶ 1, ECF No. 4-1. One of his biggest "impediment[s] to his success in school" was his behavior. *See id.* ¶ 7. From April 2012 through April 2013, J.J. was on two

IEPs that provided him with "10 hours of specialized instruction inside of the general education setting and four hours per month of behavioral support services outside of the general education setting." *Id.* ¶¶ 11, 14. Meanwhile, while J.J. had been attending Ballou Senior High School, he purchased a gun and was found in violation of a court order. *Id.* ¶ 16. As a result, on March 28, 2013, J.J. was sent to Vision Quest, "a residential program with a school and a full-time emotional support services program." *Id.* ¶ 18. On April 9, 2013, another IEP was developed for J.J., wherein he received 10 hours of specialized instruction inside of the general education setting, but got an extra hour of behavioral support services per week. *Id.* ¶ 19. By May 8, 2013, Vision Quest had provided a report on J.J. that showed the he "appeared to benefit from the small class size and structure" at Vision Quest. *Id.* ¶ 22. Vision Quest recommended that J.J. needed, *inter alia*, social skills instruction, small group/1:1 instruction, preferential seating, and check-ins with a designated teacher. *Id.* ¶ 28. Based on J.J.'s experience at Vision Quest, his mother, his mother's counsel, and Vision Quest officials agreed that a full-time IEP and placement out of the general education setting would be best for J.J., as he seemed to be improving in that environment. *Id.* ¶¶ 45, 47.

In order to be released from Vision Quest to a DCPS public school, J.J. needed to have a discharge meeting with DCPS. *Id.* ¶ 29. After a string of meetings and miscommunications from September through November 2013 between DCPS, Vision Quest, Ms. Morris, and her counsel, DCPS determined that the appropriate IEP for J.J. was the same as the April 2013 IEP, with 10 hours of specialized instruction per week. *Id.* ¶ 69. DCPS also determined that the appropriate school for J.J. was Ballou Senior High School, over the objection of his mother. *Id.* ¶ 67. At all times throughout the discharge conversations, Ms. Morris requested a full-time IEP for her son, as his time in the highly structured and restrictive environment of Vision Quest had

3

proved helpful to him. *Id.* ¶¶ 45, 47, 65, 67. Additionally, Ms. Morris repeatedly objected to J.J.'s return to Ballou, because of the gun-purchasing incident that occurred there, that resulted in him violating a court order. *Id.* ¶ 67. Ms. Morris concluded her factual allegations in her due process complaint by explaining that J.J. was about to be released from Vision Quest and had no "appropriate step-down placement. Ballou SHS is not appropriate for the student, as he needs a highly structured and therapeutic step-down program with clinical staff and intensive 1:1 supports in order to access the curriculum." *Id.* ¶ 71. J.J. was ultimately released back to Ballou SHS. *See* Pl.'s Mot. 3, ECF No. 4.

In her due process complaint, Ms. Morris alleged that DCPS (1) denied J.J. a FAPE by refusing to provide him with an appropriate IEP, and (2) denied J.J. a FAPE by refusing to provide him an appropriate school placement and location of services. *See* Pl.'s Ex. 1 at 15, 17. She requested that the hearing officer find in favor of her on all the issues raised in the complaint, *i.e.*, that J.J. receive a full-time IEP, that the hearing officer order DCPS to fund the student's tuition and transportation at a non-public school consistent with the student's needs, and that the hearing officer order DCPS to fund the compensatory education plan presented by Ms. Morris, or in the alternative, fashion his/her own compensatory education plan for J.J. *See id.* at 19.

While Ms. Morris's due process complaint was pending, J.J.'s probation was revoked, and he was pulled out of Ballou SHS, and mandated to a group home, the National Center on Institutions and Alternatives ("NCIA"). Thus, when the hearing officer heard Ms. Morris's complaint, J.J was no longer in a DCPS school. On February 16, 2014, the hearing officer dismissed Ms. Morris's claims as moot. Specifically, the hearing officer found that "given [J.J.'s] current detention . . . with no set release date, the hearing officer is unable to grant any

4

relief in this matter that will presently affect the parties' rights.  Hence, this case must be dismissed on grounds that it is presently moot, but the hearing officer will dismiss the case without prejudice to Petitioner's right to re-file the matter once [J.J's] release date has been set." *See* Pl.'s Ex. 2 at 3, ECF No. 4-2.  The plaintiff then brought this action, asking the Court to remand the case back to the hearing officer for a determination on the merits of J.J.'s case, on the grounds that his case is not moot.

### III.  ANALYSIS

### A.  Legal Standard

Though the plaintiff seeks a preliminary injunction, the Court's resolution of the legal issue concerning whether the plaintiff's case is moot also resolves the merits of the case.  The parties agreed as such at the motions hearing.  Therefore, the Court will decide this case on the merits.  Under Federal Rule of Civil Procedure 65(a)(2),[1] a district court has the power to

---

[1] Typically, the court is required to provide notice to the parties before consolidating the case on the merits with the motion for a preliminary injunction. *See University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("the courts have commonly required that 'the parties should normally receive clear and unambiguous notice of the court's intent to consolidate the trial and the hearing either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases.'") (quoting *Pughsley v. 3750 Lake Shore Drive Co-op. Bldg.*, 463 F.2d 1055, 1057 (7th Cir. 1972));  *see also Air Line Pilots Ass'n, Int'l v. Alaska Airlines, Inc.*, 898 F.2d 1393, 1397 n.4 (9th Cir. 1990) ("A district court might also convert a decision on a preliminary injunction into a final disposition of the merits by granting summary judgment on the basis of the factual record available at the preliminary injunction stage.  However, a court could not properly enter summary judgment where the notice and hearing requirements of Fed. R. Civ. P. 56 have not been followed.  Since it is undisputed that the district court's decision did not comply with these requirements, the court's judgment cannot be sustained on this theory.").

However, in this case, as set forth above, the relief sought in the complaint is the same relief sought in the preliminary injunction, and there will remain no other issues to litigate once the preliminary injunction is resolved.  Moreover, the parties agreed that disposition of the preliminary injunction motion will end this case.  As such, the cases requiring notice are not applicable in this unique situation where no factual or legal disputes will remain once the Court resolves the preliminary injunction motion. *See Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 945 (7th Cir. 1994) ("The general point is that when the eventual outcome on the merits is plain at the

5

consolidate a hearing for a preliminary injunction into one on the merits, provided that doing so does not result in prejudice to either party. *See Glacier Park Found. v. Watt*, 663 F.2d 882, 886 (9th Cir. 1981); *see also D.L. Cromwell Investments, Inc. v. NASD Regulation, Inc.*, 279 F.3d 155, 160 (2d Cir. 2002) (explaining that even if the district court did not provide adequate notice to parties, the plaintiff could not show prejudice that prevented it from presenting its case because of the consolidation). Several district courts have taken this approach in resolving a preliminary injunction motion that disposes of the entire complaint. *See, e.g.*, *Camarena v. Meissner*, 78 F. Supp. 2d 1044, 1045 (N.D. Cal. 1999) ("Because the parties have previously agreed that resolution of the preliminary injunction motion would be dispositive of the case, because the relief requested in the preliminary injunction motion is the same as the relief requested in the complaint, and because the evidence that this Court may consider in reviewing the [agency's] decision is limited to the administrative record, this Court construes the motion for a preliminary injunction as a motion for a permanent injunction and for summary judgment."); *Kickapoo Trad'l Tribe of Texas v. Chacon*, 46 F. Supp. 2d 644, 648–49 (W.D. Tex. 1999) (explaining that "[i]n a case in which the relevant facts are undisputed, exigent circumstances exist, and granting preliminary relief will effectively give a party all of the relief it would obtain after trial on the merits, consolidation of the hearing with trial on the merits under Rule 65(a)(2) is particularly appropriate."). *Cf. Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL-CIO v. Connally*, 337 F. Supp. 737, 764 (D.D.C. 1971) ("The nature of the presentation made to this court, and the clear implication that none of the parties contemplated a further stage of this litigation for the purpose of presenting evidence, have led this court to consider the issues on the assumption that what all concerned have in mind is a determinative

---

preliminary injunction stage, the judge should, after due notice to the parties, merge the stages and enter a final judgment.").

ruling on the legal issues."). As such, the Court will treat the plaintiff's motion for a preliminary injunction as one for summary judgment.

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). However, under the IDEA, judicial review of an administrative agency's decision does not follow "a true summary judgment procedure. Instead, the district court essentially conduct[s] a bench trial based on a stipulated record." *L.R.L. ex rel. Lomax v. District of Columbia*, 896 F. Supp. 2d 69, 73 (D.D.C. 2012). Thus, "rather than applying the typical standard applicable to a summary judgment motion [under Fed. R. Civ. P. 56(a)] . . . the Court in an IDEA case conducts a summary adjudication." *Id.* (internal quotation marks and citations omitted).

With respect to a district court's review of a hearing officer's determination under the IDEA, the D.C. Circuit has explained that the IDEA "plainly suggests less deference than is conventional in administrative proceedings." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005) (internal quotation marks and citations omitted). This is because under the IDEA, a district court has authority to "hear additional evidence at the request of a party and base its decision on the preponderance of the evidence." *Id.* (internal quotation marks and citations omitted). Instead, "a party challenging the administrative determination must at least take on the burden of persuading the court that the hearing officer was wrong, and that a court upsetting the officer's decision must at least explain its basis for doing so." *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988).

### B. Threshold issue

As a preliminary matter, the facts alleged in the due process complaint have changed since the filing of the instant action, and the defendant takes issue with a remand back to the

7

hearing officer given facts that were not properly before her in November 2013.  When Ms. Morris originally filed her due process complaint, J.J. was attending Ballou SHS, on a part-time IEP.  *See* Pl.'s Ex. 1, ¶¶ 1, 69; Pl.'s Mot. 3.  While the complaint was pending, J.J.'s probation was revoked and he was sent to NCIA, where he was not able to get any special education services, because only children with full-time IEPs are able to get *any* services, and J.J. currently only has a part-time IEP.  *See* Johnson Statement, Pl.'s Ex. 4, ¶¶ 6–7, ECF No. 4-4.  The defendant argues that the plaintiff "did not allege in her due process complaint that the student is not receiving IEP services or that he receives insufficient services."  *See* Def.'s Opp'n 5, ECF No. 9.  In other words, the hearing officer could not know that J.J. was not getting *any* services, as that fact was never alleged in the due process complaint, and only came into existence after the hearing officer rendered her decision.  Since the initiation of this litigation, it has become clear that notwithstanding J.J.'s current status at NCIA, and not in a DCPS school, he can still get special education services, if he has the ability to get a full-time IEP.  *See* Johnson Statement ¶¶ 6–7.  At the motions hearing, the District suggested that because this possibility was not before the hearing officer, remanding this case to the hearing officer to consider a factual scenario not originally before her would be inappropriate under 20 U.S.C. § 1415(f)(3)(B), and constitutes a failure to exhaust administrative remedies.

The District's argument is unpersuasive for two reasons.  First, the IDEA states that "[t]he party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in [the due process complaint] . . . unless the other party agrees otherwise."  20 U.S.C. § 1415(f)(3)(B).  Thus, "the subject matter of a due process hearing is limited to those issues that were raised in the due process complaint."  *See District of Columbia v. Pearson*, 923 F. Supp. 2d 82, 87 (D.D.C. 2013).  However, it is evident that the

*issues* raised by Ms. Morris in her due process complaint have not changed—she still seeks a full-time IEP and appropriate school placement for J.J. It is true that the facts before the hearing officer have changed, but those facts have not changed the issues raised, nor the ultimate relief sought.

*DeVries by DeBlaay v. Spillane* is an instructive case. 853 F.2d 264, 267 (4th Cir. 1988). In *DeVries*, the plaintiff had requested that her son attend a neighborhood school (Annandale High School), as opposed to the private special education school he was attending. *Id.* at 265. While the plaintiff's due process complaint was pending, a new IEP was developed for the plaintiff's son that moved him to another school—still not Annandale, however. *Id.* The plaintiff conceded that "virtually none of the evidence she intended to present [at trial] was related to the issue which had been the focus of the administrative proceedings," now that her son's IEP no longer called for his education at the private special education school. *Id.* Because the new IEP called for the student's education at a different school altogether, the district court dismissed the plaintiff's complaint on failure to exhaust administrative remedies grounds. *Id.* The Fourth Circuit reversed, finding that the plaintiff did not need to re-exhaust, as the relief she sought—that her son get to attend Annandale—remained the same regardless of his present IEP. *Id.* at 266–267. Moreover, the court explained that "reexhaustion is inconsistent with the statutory scheme [of the IDEA] when the complaint remains the same though the IEPs change." *Id.* at 267. Similarly here, the underlying complaint remains the same—Ms. Morris seeks a full-time IEP, compensatory education, and a proper step-down placement for her son. Just because his current school (or facility) location has changed does not render Ms. Morris's claims either unexhausted or not properly before the hearing officer in her original November 2013 complaint. As such, Ms. Morris need not re-exhaust—she is already in compliance with the IDEA.

Second, the Court is not persuaded that the IDEA promotes as static a standard as the District suggests. In *Taylor v. District of Columbia*, the District similarly argued that "it would be fundamentally unfair" for the court to overturn the hearing officer's decision based on "after-acquired evidence" never presented to the hearing officer. 770 F. Supp. 2d 105, 110 (D.D.C. 2011). That court found the defendant's position "unavailing" in light of the plain language of 20 U.S.C. § 1415(i)(2)(C)(ii), which provides that in conducting its review, the court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as it determines is appropriate." *See id.* at 109–11 (remanding the case back to the hearing officer to consider the newly-acquired evidence). Other courts have similarly followed suit, acknowledging the intersection between exhaustion under the IDEA and 20 U.S.C. § 1415(f)(3)(B). *See Maine Sch. Admin. Dist. No. 35 v. Mr. R.*, 321 F.3d 9, 18 (1st Cir. 2003) ("Although parents ordinarily must exhaust their administrative remedies before appealing to a federal court, the appellants' failure to raise a then-nonexistent compensatory education claim before the hearing officer is not fatal to judicial review. Parents are not expected to have the gift of prophecy.") (internal quotation marks and citation omitted); *Alexis R. v. High Tech Middle Media Arts Sch.*, No. 07CV830 BTM WMC, 2009 WL 2382429, at *5 (S.D. Cal. Aug. 3, 2009) ("This Court agrees with the First Circuit that a student's failure to raise her then-nonexistent reimbursement claim in her original due process complaint is not fatal to judicial review of that claim."). Thus, the fact that the status of J.J.'s services changed from part-time to none-at-all— an unknowable fact at the time of the hearing officer's decision—does not render the plaintiff's claim either unexhausted or not properly before the hearing officer, given that the plain language

of 20 U.S.C. § 1415(i) allows courts to hear additional evidence, and that courts do not interpret the IDEA to presume that parents "have the gift of prophecy." *See Maine*, 321 F.3d at 18.[2]

### C. Mootness

The Court now turns to whether the hearing officer, was in fact, wrong in finding that J.J.'s case was moot.[3] A case is considered "moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). A case, however, is "not moot so long as any single claim for relief remains viable, whether that claim was the primary or secondary relief originally sought." *Ramer v. Saxbe*, 522 F.2d 695, 704 (D.C. Cir. 1975).

In this case, the hearing officer determined that she was "unable to grant any relief in this matter that will presently affect the parties' rights." *See* Pl.'s Ex. 2 at 3, ECF No. 4-2. Though the hearing officer's explanation is brief, she seemed persuaded by the defendant's argument that because of J.J.'s status in a juvenile detention center, he "would not be able to attend any nonpublic placement DCPS might be ordered to provide or receive any compensatory education DCPS might be ordered to fund." *Id.* at 2. While that statement may have been true as to the placement relief sought by J.J.'s mother at the time, declaratory relief and compensatory

---

[2] *See also* MARK C. WEBER, SPECIAL EDUCATION LAW AND LITIGATION TREATISE § 22:4 (3d ed. 2008) ("Courts should take the additional evidence provision of the act as an invitation to receive new evaluations and information about events that occurred after the hearing, in order to ensure that any prospective court order makes sense in the child's current situation.").

[3] Although the hearing officer is not in fact an Article III judge, she was able to issue a decision on mootness grounds. Courts in this jurisdiction have acknowledged as much. *See Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 833 (D.C. Cir. 2006) (disagreeing with a hearing officer's decision to dismiss an administrative complaint on mootness grounds); *Fullmore v. District of Columbia*, No. 13-00409, 2014 WL 808083, at *5 (D.D.C. Feb. 28, 2014) (explaining that courts have "evaluated arguments regarding mootness with reference to the claims asserted in the administrative complaint," and upholding a hearing officer's decision to dismiss an administrative complaint on mootness grounds).

education remained as viable forms of relief that the hearing officer did not address. Where certain forms of relief remain available, such claims are not mooted. *See Church of Scientology of California v. U.S.*, 506 U.S. 9, 14 (1992) ("The availability of [a] possible remedy is sufficient to prevent [a] case from being moot."); *Pinto v. District of Columbia*, 938 F. Supp. 2d 25, 31 (D.D.C. 2013) (explaining that where a hearing officer has resolved one of the plaintiff's claims, but not another, the unresolved claim does not become moot); *Suggs v. District of Columbia*, 679 F. Supp. 2d 43, 54 (D.D.C. 2010) ("Where a school district has provided a parent with some forms of relief, but not with all of the specific relief requested by her, her claims are not moot.").

Specifically, Ms. Morris asked that the District provide J.J. with a full-time IEP. Declaratory relief awarding a full-time IEP remained, and remains available and J.J. does not need to be currently attending a DCPS school for a hearing officer to award that relief. Importantly, if J.J. were to receive a full-time IEP today, he could begin getting full-time special education at the NCIA, as the parties have represented to the Court, or be released entirely to a new DCPS school. *See* Johnson Statement ¶¶ 6–7; Pl.'s Reply 3, ECF No. 12. Thus, that claim for relief is not moot.

In addition, Ms. Morris requested any compensatory relief that was appropriate. "Under the theory of compensatory education, courts and hearing officers may award education services . . . to be provided prospectively to compensate for a past deficient program." *Reid ex rel. Reid*, 401 F.3d at 522 (internal quotation marks and citations omitted). Courts have specifically held that where the possibility of compensatory education is still available, a plaintiff's claim will survive a mootness challenge. *See Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 833 (D.C. Cir. 2006) (explaining that even though one of the plaintiff's claims was mooted, the hearing officer's failure to address the plaintiff's compensatory education claim renders it not

moot); *Theodore v. District of Columbia,* 655 F. Supp. 2d 136, 144 (D.D.C. 2009) (declining to dismiss as moot unresolved claims for compensatory education, though the District had provided partial relief to plaintiffs); *Flores ex rel. J.F. v. District of Columbia*, 437 F. Supp. 2d 22, 30–31 (D.D.C. 2006) (holding that the plaintiff's case was not moot because "the plaintiff here contends that her request for a compensatory education plan for [her child] has not been satisfied"). Similarly here, compensatory education remains available to J.J., and always did.[4] As such, that claim for relief is not moot.

Finally, Ms. Morris's claim for placement relief also is not moot. Though J.J. may not necessarily benefit from a step-down placement the day the hearing officer makes a determination, given that his release date from NCIA is not currently ascertained, he will still benefit from that decision the moment he is released from NCIA—which is impending. *See* Pl.'s Reply 1, Def.'s Opp'n 3 (explaining that J.J. will be released anywhere between three months and nine months from his January 2014 detention). As such, a decision made now will benefit him if not immediately, as soon as he is released.[5]

---

[4] Moreover, Ms. Morris has represented to the Court that even though J.J. is currently at NCIA, he comes home every other weekend and could receive compensatory education services when he is home. *See* Morris Statement ¶ 6, ECF No. 12-1; Pl.'s Reply 8 n.4.

[5] This claim for relief, therefore, may implicate the ripeness, as opposed to the mootness doctrine of justiciability. Even so, the issue is still ripe for judicial review. "Determining whether administrative action is ripe for judicial review requires [a court] to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 440 F.3d 459, 463 (D.C. Cir. 2006). "Under the doctrine's first prong, we look to see whether the issue is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Village of Bensenville v. F.A.A.*, 376 F.3d 1114, 1120 (D.C. Cir. 2004) (citations omitted). Under the second prong, the court considers "whether postponing judicial review would impose an undue burden on [the parties] or would benefit the court." *Id.* Here, there is no reason to postpone judicial review of Ms. Morris's placement relief claim until a release date is actually set, as that would burden the parties, who would have to re-litigate the placement relief issue that arose once the release date was set. Postponing a judicial decision would also prove an inefficient use of judicial resources,

Importantly, asking Ms. Morris to wait until J.J.'s release date is set to re-file her due process complaint is inconsistent with the purpose of the IDEA, which is to ensure that children with disabilities get the special education services they need. Though the statute provides for prompt resolutions of due process complaints, it could take up to 75 days after a complaint is filed for a hearing officer to reach a decision. *See* 34 C.F.R. § 300.515. For instance in this case, Ms. Morris filed her administrative complaint on November 14, 2013, and did not get a decision until three months later, on February 13, 2014, with an intermittent decision issued in January 2014, two months after her complaint was filed.[6] It is entirely possible that if Ms. Morris files a new due process complaint once J.J.'s release date is set, it will take a hearing officer up to 75 days to issue a decision on J.J.'s step-down placement and IEP. This means that until a hearing officer issues a decision, J.J.'s IEP and placement status remain in limbo. Moreover, it is entirely possible that in the up-to-75 day period the hearing officer takes to issue a decision, J.J.'s school status may change again, as he has been in-and-out of juvenile detention facilities for nearly four years. *See* Pl.'s Ex. 1 ¶¶ 2–7. And Ms. Morris claims that J.J. being sent to Ballou, because it is an inappropriate setting, resulted in his criminal behavior. Thus, if the release date is set less than 75 days before release, he could end up back at Ballou before a decision is rendered, possibly getting into trouble again. Thus, it is entirely possible that if Ms. Morris has to start all over again, J.J.'s case may again be found moot by a hearing officer, making Ms. Morris's claim capable of repetition, yet evading review. *See Zearley v. Ackerman*,

---

and, as set forth above, frustrate the purposes of the IDEA, which calls for prompt decision-making. As such, the plaintiff's placement relief claim is sufficiently ripe for judicial review.

[6] The hearing officer originally issued a decision on January 14, 2014, finding the case not moot because neither party provided documentation showing one way or another that the case was moot. The defendants then filed a motion for reconsideration of that decision, with supporting affidavits. *See* Pl.'s Ex. 2 at 1–2, ECF No. 4-2. This explains why the February 2014 decision date is out of the 75 day window.

116 F. Supp. 2d 109, 112 (D.D.C. 2000) ("The doctrine of 'capable of repetition yet evading review' is an exception to mootness for cases where the party can demonstrate that '(1) the challenged action is in its duration too short to be fully integrated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'") (quoting *United States v. Weston*, 194 F.3d 145, 148 (D.C. Cir. 1999)).

This is not the cycle contemplated by the IDEA. A remand is the appropriate remedy so that Ms. Morris can get the prompt hearing she seeks for J.J., without having to fear J.J.'s detention-status as an impediment to that relief. Indeed, if the hearing officer finds that J.J. is entitled, a full-time IEP and a new placement may potentially help end the pattern of J.J. being in-and-out of detention facilities.

The Court therefore finds that J.J.'s case is not moot, and as such, will remand this case back to the hearing officer to hold a due process hearing within 10 business days of entry of this Opinion, and issue a decision within 7 calendar days of the hearing. The hearing officer should address Ms. Morris's claim for declaratory relief in the form of a full-time IEP, as well as her claims for compensatory education and a proper step-down placement for J.J. when he is released from NCIA. The hearing officer is not limited to the facts before her in the November 2013 due process complaint, because, as set forth above, Ms. Morris currently seeks the same relief for J.J. that she did then, regardless of J.J.'s current school (or detention facility) placement. The hearing officer, *employing all of her equitable powers*, should therefore consider what placement relief is available to J.J. upon his release from NCIA.

## IV.  CONCLUSION

For the foregoing reasons, the plaintiff's motion for a preliminary injunction, consolidated with the case on the merits, is GRANTED, and JUDGMENT IS ENTERED for the plaintiff.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  April 25, 2014                                                                        RUDOLPH CONTRERAS
                                                                                                             United States District Judge